## SOLYMAN BELL

*v.*

## ALLEN F. MALLORY.

1. RIOT—*what constitutes.* A party claiming to have purchased a colt, procured the assistance of two other persons to drive the animal from the range into the inclosure of the owner, and, against the remonstrance of the latter, attempted to secure the colt and take it away, one of the confederates being armed with a pistol and threatening the owner upon his interfering to prevent the property from being taken out of his possession: *Held,* these acts constituted a riot.

2. SAME—*all are liable.* In such a combination, when proved, the unlawful acts of one are the acts of all the confederates.

APPEAL from the Circuit Court of Grundy county; the Hon. J. McROBERTS, Judge, presiding.

Mr. B. C. COOK, for the appellant.

Messrs. S. W. & T. B. HARRIS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, in the Grundy circuit court, by Mallory against Bell, for a malicious prosecution, and damages for the plaintiff.

The declaration alleged that defendant falsely, maliciously, and without any reasonable cause whatever, by complaint under oath, charged the plaintiff with having, in conjunction with two other persons, committed a riot by entering the premises of the defendant and using violent and harsh language toward him, and by showing a pistol and threatening bodily injury to the defendant, and upon such charge, falsely, maliciously, and without any reasonable or probable cause, procured a warrant for plaintiff's arrest, and he was compelled to enter into a recognizance to appear at court and answer to the charge; that he did appear; that no indictment was found against him, and thereupon he was discharged by the court,

averring that defendant had no reason to suspect or believe that plaintiff was guilty of a riot; that he was put to great expense, etc. The damages were laid at ten thousand dollars.

The jury awarded the plaintiff one thousand eight hundred and thirty dollars in damages. On a motion for a new trial, the court required the plaintiff to remit one thousand two hundred and thirty dollars, and rendered judgment for the balance, being six hundred dollars.

To reverse this judgment the defendant appeals.

The *gravamen* of this action, as stated in the declaration, is, that the plaintiff, in conjunction with two others, was charged by the defendant with the commission of a riot, there being no reasonable or probable cause for the charge. This is the gist of the action, and must be determined by the evidence in the record, and it is so admitted by counsel for appellee.

We have looked into the record and examined the testimony carefully, and are impressed with the conviction that, if probable cause for an arrest and a criminal prosecution can ever be established on a charge of a riot, it is most satisfactorily established in this case, and the wonder is, how the jury could have found differently, under the instructions of the court.

In our criminal code, a riot is defined to be the doing of an unlawful act by two or more persons with force or violence against the person or property of another, with or without a common cause of quarrel, or even do a lawful act in a violent and tumultuous manner. R. S. ch. 30, sec. 117.

It was held by this court in *Dougherty* v. *The People*, 4 Scam. 179, that an unlawful act must be done, which, in that case, was charged to have been done on the person of another.

Here the unlawful act charged to have been done was not only against the person of Bell, but against his property.

What are the facts in the record? It is unnecessary to recapitulate them here. They are full to the point that these three men, Henry, Crawford and Mallory, were banded together to take the colt from the possession of appellant—he

claiming it as his own, and, for aught that appears in the record, was his own absolute property—with force, if necessary, one of the party, Henry, being armed with a revolver, and they fully competent to carry into effect their determination. The parties find the colt in the prairie, feeding, and, without any authority, drive him, with other horses in the gang, to appellant's enclosure, and, without any authority, proceeded to let down the bars so that he might be captured, Mallory having brought a rope with him out of which to make a halter. Appellant appeared on the scene and forbade the act, and forbade Henry from taking the colt, and ordered the parties off his premises. The day before, appellant had told Henry, who had come to his residence, he could not have the colt, when Henry told him to go away, and if he did not, he would slap him in the mouth, and that he would have the colt anyway. When, on the next day, Henry came with his confederates, Crawford and Mallory, and drove the colt up to get him into the yard, so that he could be haltered, appellant, persistently forbidding the taking, set his dogs on the colts, and they got them out of their reach. Henry halloed to appellant not to run the colts, and ordered him to stop, and ran towards him, shouting, "Stop! You will have to stop some time or other. If you don't stop I will stop you."

This from a man armed with a revolver, backed by his confederates, bent on an unlawful purpose, was a threat of fearful import. These parties had been guilty of one unlawful act in driving the colt out of his "range," and of another in entering upon appellant's premises in the manner they did; of another in letting down the bars of appellant's enclosure, at the same time threatening to do another act equally unlawful, to take property out of the custody of its lawful owner, in defiance of his rights and against his earnest and repeated protest. These confederates assumed to take the law into their own special keeping, first deciding that Henry had a right to take the colt at all hazards, and then entering the premises of its owner as a *posse*, one of them armed, to take the property

forcibly and against the will of the owner. If these do not bring the case within the statutory definition of a riot, we are at a loss to conceive a set of facts which would.

We forbear comment on the facts in detail. Grouping them, they establish one of the most outrageous cases of contempt of public law which has come before us.

There does not seem to be a palliating circumstance to which appellee can resort for justification. It is true, he feigns to believe, as he had no pistol or other deadly weapon, and made no threats, he should not be responsible for the acts of others. He has endeavored, and quite successfully in the court below, to make himself a subordinate in the transaction, and Henry and Crawford as the active participants, but the proved facts show he was the moving spirit. He had purchased this property from Henry; he advised taking it by force, if necessary; he aided in driving the colt from the range; he entered the premises of appellant with his confederates; he was present aiding in letting down the bars; he had the rope in his pocket with which to halter the colt. In such a combination, when proved, the unlawful acts of one are the acts of all the confederates. No one can escape the penalties which may flow from such unlawful combinations.

In the view we have taken of the testimony in this cause, we are well convinced appellee, Mallory, was guilty, with Henry and Crawford, of a riot. Being so guilty, there was probable cause for the arrest of appellee, and the jury should have so found.

The case should go to another jury, and that it may, the judgment of the circuit court is reversed and the cause remanded.

*Judgment reversed.*